IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| RIVERSTONE GROUP, INC., an Illinois corporation,<br>      Plaintiff and Counter-Defendant,<br><br>v.<br><br>MIDWEST OPERATING ENGINEERS FRINGE BENEFIT FUNDS,<br>      Defendant and Counter-Plaintiff. | Case No. 4:19-cv-04039-SLD-JEH |

**Order**

Before the Court are a Motion for Protective Order filed by the Plaintiff/Counter Defendant RiverStone Group, Inc. (RiverStone) (D. 29) and a Motion to Quash Deposition to Testify filed by third-party James Misercola (Misercola) (D. 32). The Defendant/Counter-Plaintiff, Midwest Operating Engineers Fringe Benefit Funds (Funds) filed its responses thereto. For the reasons stated, *infra*, the motions are granted.[1]

**I**

**A**

As Chief Judge Darrow set forth in her order on the Funds, motion to dismiss, the Complaint alleges RiverStone entered into to a collective bargaining agreement (CBA) with the International Union of Operating Engineers, Local 150 (Local 150). (D. 1). RiverStone and Local 150 became embroiled in a labor dispute,

---

[1] Citations to the docket in this case are abbreviated at "(D. __ at ECF p. __)."

1

which resulted in a work stoppage and picketing by some Local 150 members. To continue operations, RiverStone hired "permanent replacements" to do work that strikers previously performed. *Id.*

The Funds are a series of trust funds established to provide benefits to Local 150 members pursuant to the Labor Management Relations Act (LMRA), 29 U.S.C. §§ 141–197, and the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461. (D. 9). The benefits are partially paid for by RiverStone pursuant to the CBA. *Id.* The Funds hired an auditor to audit RiverStone. (D. 9-1). On February 12, 2019, the Funds sent RiverStone an audit letter alleging that RiverStone owed them $243,882.40 for the replacements' benefits. (D. 9-1 at ECF pp. 6–13). The Funds believe that RiverStone is required to pay them under the CBA for benefits accrued by the replacements. In response, RiverStone initiated this suit under the Declaratory Judgment Act, 28 U.S.C. § 2201, asking the Court to declare that RiverStone does not owe the Funds payment for benefits accrued by the replacements. RiverStone alleges subject matter jurisdiction under 29 U.S.C. § 185(a) (LMRA § 301). (D. 1). Also before the Court is the Funds Counterclaim, seeking an audit and payment of the contributions at issue in the declaratory judgment action. (D. 20).

## B

RiverStone argues that the scope of discovery is limited to the question of whether the replacement workers it hired were "permanent." (D. 30 at ECF pp. 2-3). According to Riverstone, "[w]hat matters, and all that matters . . . is whether the agreement between RiverStone and the permanent replacement workers establishes the intent of the parties as to the permanency of the workers' employment, at the time the relationship of RiverStone with the permanent replacements was established." (D. 30 at ECF p. 4) (emphasis removed). It further argues that the Funds efforts to inquire in discovery into questions regarding

2

alleged labor law violations is irrelevant to whether the replacement workers were "permanent," and, accordingly, the Funds should not be allowed to inquire into such questions in discovery.

The Funds, in response, do not offer a different definition of how the Court must determine whether the replacement workers are "permanent," although they characterize RiverStone's test as "not entirely accurate." (D. 36 at ECF p. 36). The Funds, however, offer no alternative legal framework which the Court must use in determining whether replacement workers are permanent, although they do argue that inquiry into labor law violations "might lead to relevant information." (D. 36 at ECF p. 5).

RiverStone also seeks a protective order, precluding the depositions of Charles C. Ellis, President of RiverStone, and Michael Ellis, Vice President of Riverstone, because neither person has information relevant to the issue in this case, *i.e.*, whether the employees for whom the Funds seek contributions from RiverStone are "permanent replacements." According to RiverStone, these individuals had no involvement in communicating with the alleged permanent replacements as to the permanency of their employment or contributions to the Funds on behalf of alleged permanent replacements. Rather, Marshall Guth, a Riverstone employee, handled all the details concerning the hiring of alleged permanent replacements, their wages, hours, and other terms and conditions of employment. Because in deciding whether an employee is a "permanent replacement," the legal test is whether the agreement between RiverStone and the replacement workers established the intent of the parties as to the permanency of the worker's, RiverStone argues that neither Ellis has relevant information since they had no involvement in communicating with the replacement workers.

The Funds disagree, asserting that Michael Ellis talked to employees about their permanency and told employees that they would always have a job. In

3

support of this assertion, the Fund offers the affidavits of Joe Ellena and Ben Gibson, both employees of Riverside at the time. (D. 36-1 at ECF pp. 1-6). The Funds argue that this fact is sufficient to demonstrate that these witnesses will have relevant information to the issues in this case.

Finally, non-party James Misercola seeks to quash the Funds deposition of him, as does RiverStone. (D. 32 & 29 at ECF p. 3). Misercola is a resident of Massachusetts, who, during the relevant period, was retained by RiverStone as a labor consultant. He asserts that he had no involvement in the hiring of replacement workers by RiverStone, and, therefore he has no relevant information to offer. Moreover, he argues that the subpoena requires him to sit for a deposition and provide documents more than 100 miles from where he resides and that he does not regularly conduct business in this district, which is prohibited by Federal Rule of Civil Procedure 45(d)(3)(A)(ii). (D. 32 at ECF pp. 2-5).

The Funds respond that Misercola regularly conducts business in this district, for he was on site at RiverStone projects in the district for numerous years performing work for them. (D. 34 at p. 6). Moreover, Misercola has relevant information concerning the issues in this case, as he was on site communicating to bargaining unit employees on a regular basis. (D. 34 at p. 6).

## II

### A

Federal Rule of Civil Procedure 26(b)(1) provides that "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." What is "relevant" to a party's claim or defense is naturally dictated by what a party must prove to make out its claim or defense.

Here, RiverStone has asserted that in order to succeed in this declaratory judgement action, it must show that the replacement workers it hired were "permanent." In order to answer this question, discovery is appropriate only on the question of whether the agreement between RiverStone and the replacement workers establishes the intent of the parties as to the permanency of the workers' employment, at the time the relationship of RiverStone with the replacements was established. (D. 30 at ECF p. 4).

Given that the Funds have failed to articulate a legal standard different from that offered by RiverStone, at least for purposes of this motion, the Court presumes this is the correct legal standard which governs the scope of discovery. Because that test relates to the intent of the parties as to their permanency at the time their employment relationship was established, any alleged unfair labor practices are irrelevant to this question. Rather, as RiverStone asserts, discovery is limited to information that is relevant to the intent of the parties when entering into their employment relationship. Although the Funds assert that discovery into unfair labor practices "might lead to relevant information," (D. 36 at ECF p. 5) that is *not* the standard set forth in Rule 26(b)—the discovery sought must itself be relevant and not merely "might lead" to relevant information. With this appropriate understanding of the scope of discovery, the resolution of discovery disputes in this case becomes readily apparent.

### B

Regarding the deposition of RiverStone President Charles Ellis, the Funds have failed to cite to any evidence that he had any personal involvement in the establishment of an employment relationship with the replacement workers. Rather, the affidavits submitted by the Funds mention only Vice-President, Michael Ellis. Although the Funds ask this Court to assume Charles Ellis was involved in the formulation of the relationships simply by virtue of his position as

President, the Court does not find such an assumption warranted in this case in light of the unrebutted affidavit of Charles Ellis asserting that he had no personal involvement in the process. (D. 29-2).

Vice-President Michael Ellis submitted a similar affidavit disavowing personal involvement in the establishment of an employment relationship with the replacement workers. (D. 29-3). Differently in this instance, the Funds present the affidavits of two RiverStone employees, both of whom assert that Michael Ellis spoke with them regarding employment related matters. (D. 36-1). The affidavits, however, are vague concerning exactly when these communications occurred and whether such communications related to the intent of the parties at the time their employment relationship was established.  Without more specificity, these affidavits are insufficient to counter Michael Ellis' affidavit disavowing any personal involvement in that process.

Finally, regarding James Misercola, both RiverStone and Misercola again assert that he had no personal involvement in establishing the employment relationship between RiverStone and the replacement workers at the time the relationship was formed. (D. 29-4). Also once again, the Funds make vague assertions about general communications between Misercola and replacement employees regarding their employment, but nothing specific regarding the intent of the parties at the time they formed their relationship. Without more specificity, the Court cannot conclude that Misercola has relevant information to the claims or defenses in this case.

### III

As set forth, *supra*, on the record before the Court in conjunction with the arguments and responses as framed by the parties, the Court concludes that the scope of discovery is limited to the question of whether RiverStone's replacement workers were "permanent replacements," as determined by whether the

agreement between RiverStone and the replacement workers established the intent of the parties as to the permanency of the workers. This limitation precludes inquiry into alleged unfair labor practices, as such unfair labor practices are not relevant to the claims and defenses in this case. Additionally, on the record before the Court, Charles Ellis, Michael Ellis, and James Misercola do not have information relevant to a claim or defense in this case.[2]

    Accordingly, the motions before the Court are granted.

*It is so ordered.*

Entered: September 21, 2020

s/Jonathan E. Hawley
U.S. Magistrate Judge

---

[2] If the discovery on the relevant issues in the case demonstrates that these witnesses do in fact have relevant information on the claims or defenses in this case, the Funds can, of course, file a motion to examine these witnesses based on newly discovered information during the course of discovery.