UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| RIVERSTONE GROUP, INC., )<br>)<br>Plaintiff/Counter-Defendant, )<br>)<br>v. )<br>)<br>MIDWEST OPERATING ENGINEERS )<br>FRINGE BENEFIT FUNDS, )<br>)<br>Defendant/Counter-Plaintiff. ) | Case No. 4:19-cv-04039-SLD-JEH |

ORDER

Before the Court are Plaintiff/Counter-Defendant[1] RiverStone Group, Inc's ("RiverStone") Motion for Summary Judgment, ECF No. 22, Defendant/Counter-Plaintiff Midwest Operating Engineers Fringe Benefit Funds' ("the Funds") Cross-Motion for Summary Judgment, ECF No. 47, and the Funds' Motion to Supplement Record with New Evidence, ECF No. 50. For the following reasons, RiverStone's Motion for Summary Judgment is GRANTED, the Funds' Cross-Motion for Summary Judgment is DENIED, and the Funds' Motion to Supplement Record with New Evidence is GRANTED.

BACKGROUND[2]

I.  **Factual Background**

---

[1] For the sake of clarity, the Court will refer to RiverStone Group, Inc. as "Plaintiff" and Midwest Operating Engineers Fringe Benefit Funds as "Defendant" when citing to each party's briefing.

[2] At summary judgment, a court must "constru[e] the record in the light most favorable to the nonmovant." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Unless otherwise noted, the factual background of this case is drawn from RiverStone's statement of undisputed material facts, Pl.'s Mot. Summ. J. 2–3; the Funds' statement of disputed material facts and additional material facts, Def.'s Cross-Mot. Summ. J. 2–8; RiverStone's response to the Funds' additional material and immaterial facts, Pl.'s Resp. Def.'s Cross-Mot. Summ. J. & Reply Supp. Pl.'s Mot. Summ. J. 3–11, ECF No. 49; and exhibits to the filings. The Funds have also moved for leave to add a new paragraph to the list of additional undisputed material facts in their Cross-Motion for Summary Judgment. Def.'s Mot. Suppl. R. 3. RiverStone asks the Court to deny the motion. Pl.'s Resp. Def.'s Mot. Suppl. R. 3, ECF No. 52. The Court grants the Funds' motion to supplement and will note RiverStone's opposition for the purpose of evaluating whether the material in the additional paragraph is disputed.

RiverStone is a mining company that operates sand and stone quarries in Illinois, Iowa, and Missouri. The International Union of Operating Engineers, Local 150 (the "Union") is a labor organization within the meaning of 29 U.S.C. § 152(5) and § 1002(4). RiverStone and the Union entered into a collective bargaining agreement ("CBA"), under which the Union would represent a bargaining unit of employees at RiverStone and RiverStone would pay contributions to the Funds on behalf of those employees, with a term beginning July 31, 2014. The CBA expired on May 1, 2016. Prior to its expiration, the parties began negotiating a successor agreement. No such successor agreement has yet been reached.

On March 20, 2018, seven workers at RiverStone ("initial employees"), who were members of the bargaining unit, went on strike. In response, RiverStone hired new workers ("new employees") to perform the work previously done by the initial employees.[3] When the initial employees commenced their strike, RiverStone ceased making contributions to the Funds on their behalf.

Some of the initial employees made unconditional offers to return to work, at which point RiverStone resumed making contributions to the Funds on their behalf. RiverStone refuses to make contributions on behalf of the new employees. On February 12, 2019, the Funds sent an audit letter to RiverStone, asserting that RiverStone owed them $243,882.40 in unpaid contributions for the new employees' benefits.

II.  **Procedural Background**

---

[3] RiverStone claims that these new employees are "permanent replacements," while the Funds deny that they are "permanent replacements" and instead refer to them as "replacement workers." *See* Pl.'s Resp. Def.'s Cross-Mot. Summ. J. & Reply Supp. Pl.'s Mot. Summ. J. 3 (quotation marks omitted). Because the classification of these workers is disputed, the Court will refer to them as "new employees" and to the workers who had been hired prior to the strike as "initial employees."

RiverStone brought this suit on February 25, 2019, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a declaration from the Court that RiverStone was not obligated under the CBA to make contributions to the Funds on behalf of the new employees. Compl. 2–3, ECF No. 1.[4] On June 15, 2020, the Funds filed a counterclaim against RiverStone pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, requesting the Court to order that an audit be taken as to all RiverStone employees covered by the CBA in order to determine the amounts required to be paid to the Funds for the period of May 1, 2016 to the present, that RiverStone pay any required amounts, that RiverStone submit delinquent monthly contribution reports to the Funds, that RiverStone be permanently enjoined to continue submitting the required reports and contributions, and that the Funds be awarded the costs of the audit along with reasonable attorney's fees and costs. Def.'s Am. Answer & Countercl. 4–6, ECF No. 20.

RiverStone moved for summary judgment as to both its claim and the Funds' counterclaim on July 21, 2020, arguing that the new employees are, as a matter of law, permanent replacements and that RiverStone has no obligation to contribute to the Funds on behalf of these permanent replacements because the CBA is expired and established labor law does not compel the opposite conclusion. Pl.'s Mot. Summ. J. 5–10, 14. It seeks a summary declaration that it "is not liable for contributions, liquidated damages, interest and audit charges amounting to $243,882.40 as of February 12, 2019 on behalf of Permanent Replacements, or, thereafter, required to contribute to the Funds on behalf of Permanent Replacements." *Id*. at 2.

---

[4] On March 18, 2020, the Court denied the Funds' motion to dismiss for lack of subject matter jurisdiction, ECF No. 8, finding that the Court has jurisdiction over RiverStone's complaint under the Labor Management Relations Act, 29 U.S.C. §§ 141–97, choosing to exercise its discretion under the Declaratory Judgment Act, and determining that its jurisdiction was not preempted by the National Labor Relations Act, 29 U.S.C. §§ 151–69. Mar. 18, 2020 Order 3–8, ECF No. 11.

On January 22, 2021, the Funds filed a cross-motion for summary judgment, asserting that, pursuant to ERISA, RiverStone does owe them contributions based upon the hours the new employees worked.[5]  Def.'s Cross-Mot. Summ. J. 8–10.

## DISCUSSION

### I. Legal Standard

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Where one party has properly moved for summary judgment, the nonmoving party must respond "by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Parties may not merely refer to their own pleadings, *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), but must instead "cit[e] to particular parts of materials in the record, including depositions, documents, [and] . . . affidavits or declarations" or show "that the materials cited do not establish the absence or presence of a genuine dispute," Fed R. Civ. P. 56(c)(1).[6]  The court is to "constru[e] the record in the light most favorable to the nonmovant," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003), "resolving all factual disputes and drawing all reasonable inferences in favor of [the nonmovant]," *Grant*, 870 F.3d at 568.  However, the nonmovant "is not entitled to

---

[5] The Court presumes that the Funds seek summary judgment as to both RiverStone's claim and the Funds' counterclaim.
[6] "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

4

the benefit of inferences that are supported by only speculation or conjecture." *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (quotation marks omitted).

"The ordinary standards for summary judgment remain unchanged on cross-motions for summary judgment . . . ." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017). The court simply "construe[s] all inferences in favor of the party against whom the motion under consideration is made." *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 561–62 (7th Cir. 2002) (quotation marks omitted).

## II. Analysis

RiverStone urges the Court to find that, since the CBA was expired at the time it hired the new employees, it has no contractual duty to contribute to the Funds on their behalf. Pl.'s Mot. Summ. J. 6–7. The Funds counter that Section 515 of ERISA compels RiverStone to continue making contributions on behalf of all bargaining unit employees as per the terms of the CBA, even after its expiration. Def.'s Cross-Mot. Summ. J. 8–12.[7] Because of the complexity of the laws governing the collection of employee benefits, the Court will first provide an overview of the relevant legal framework before examining the merits of each party's argument for summary judgment.

### a. Legal Framework

ERISA Section 515 provides that

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained

---

[7] RiverStone argues that "[t]his is not a case under [ERISA]" and that therefore "the issue is not whether RiverStone has a duty to contribute to the Funds on behalf of Permanent Replacements pursuant to ERISA," citing in support to this Court's March 18, 2020 order resolving the Funds' motion to dismiss. Pl.'s Mot. Summ. J. 6–7 (citing Mar. 18, 2020 Order 9 (determining that this case was "a LMRA case only" for purposes of evaluating proper venue)); *see also* Pl.'s Resp. Def.'s Cross-Mot. Summ. J. & Reply Supp. Pl.'s Mot. Summ. J. 11 (citing to same). The Funds respond that after the Court's March 18, 2020 order, they filed a counterclaim under ERISA to collect unpaid contributions; thus, it has since become an ERISA case. Def.'s Reply Supp. Def.'s Cross-Mot. Summ. J. 1, ECF No. 51. Because the Funds introduced an ERISA counterclaim after March 18, 2020, *see* Def.'s Am. Answer & Countercl. 4–6, the Court will evaluate whether the Funds may recover under ERISA.

agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. "Employers are required to make contributions only on behalf of those employees indicated by the agreements." *Cent. States, Se. & Sw. Areas Pension Fund v. Hartlage Truck Serv., Inc.*, 991 F.2d 1357, 1360 (7th Cir. 1993). While ERISA cases frequently involve CBAs, an employer may be required to contribute under ERISA even in the absence of a valid CBA if another agreement, such as a participation agreement, establishes a duty on the part of the employer to make contributions. *See Cent. States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1153–54 (7th Cir. 1989) (finding that ERISA applied to a situation where a union and an employer signed "a participation agreement, separate from the collective bargaining agreement" because "nothing in ERISA makes the obligation to contribute depend on the existence of a valid collective bargaining agreement"); *see also Brown v. C. Volante Corp.*, 194 F.3d 351, 354 (2d Cir. 1999) (finding that the district court could, under ERISA, consider whether welfare and pension fund trustees could recover unpaid contributions from an employer where the issue was the employer's duties arising from "adopting . . . two CBAs that it never signed").

After a CBA or other relevant agreement expires, an employer's obligation under ERISA to pay contributions pursuant to that agreement ceases. *See Laborers Health & Welfare Tr. Fund for N. Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 548–49 (1988); *see also Chi. Area I.B. of T. Health & Welfare Tr. Fund v. Thomas S. Zaccone Wholesale Produce, Inc.*, 874 F. Supp. 188, 190 (N.D. Ill. 1995) (noting that in *Advanced Lightweight Concrete*, the Supreme Court held that "following the expiration of [an] agreement, the employer's obligation to contribute to the funds, at least under ERISA, ceased"). However, an employer may nonetheless be required to continue making contributions under the same conditions as set forth

in the CBA pursuant to the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151–69, as the National Labor Relations Board ("NLRB") has found that an employer's unilateral decision to stop paying contributions after the CBA's expiration but while negotiations as to a new CBA are ongoing violates § 8(a)(5) of the NLRA.[8]  *See NLRB v. Katz*, 369 U.S. 736, 737–39, 743 (1962) (finding that the Second Circuit erred in refusing to enforce a cease-and-desist order issued by the NLRB and agreeing with the NLRB's conclusion that "an employer's unilateral change in conditions of employment under negotiation is . . . a violation of [§] 8(a)(5)"); *NLRB v. Emsing's Supermarket, Inc.*, 872 F.2d 1279, 1283–85 (7th Cir. 1989) (granting enforcement of an NLRB order to an employer to cease and desist from unfair labor practices, including failing to make certain contractual payments after a CBA's expiration, and noting that "[a]n employer may not make changes in the terms and conditions of employment reflected in an expired [CBA; i]nstead, the employer must maintain the *status quo* after the expiration of a [CBA] until a new agreement is reached or until the parties bargain in good faith to impasse" (quotation marks and citations omitted omitted)).

That courts look to ERISA to evaluate whether contributions are owed prior to a CBA's expiration but that a failure to pay contributions post-expiration may constitute a violation of the NLRA poses certain jurisdictional challenges.  Determining whether an employer has violated its obligations under ERISA is well within the sphere of what a district court may do.  *See Advanced Lightweight Concrete*, 484 U.S. at 547.  But the Supreme Court has held that district courts do not have jurisdiction to resolve claims of unpaid contributions when no contractual provisions applies—because the contract is expired and includes no provision requiring the employer to continue contributions during post-expiration negotiations—and thus any failure to

---

[8] NLRA § 8(a)(5) provides that "[i]t shall be an unfair labor practice for an employer to refuse to bargain collectively with the representatives of his employees." 29 U.S.C. § 158(a)(5).

7

pay contributions could only constitute a violation of NLRA § 8(a)(5) instead of ERISA. *See id.* at 547–49;[9] *see also Auto. Mechs. Loc. 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 745 (7th Cir. 2007) ("In *Advanced Lightweight Concrete*, the Supreme Court held that [ERISA Section] 515 does not give rise to any federal right to have an employer make post-contract contributions while negotiations are ongoing. . . ."). Rather, the enforcement of post-contract payment as required by NLRA § 8(a)(5) is under the exclusive jurisdiction of the NLRB. *Advanced Lightweight Concrete*, 484 U.S. at 544, 548–49.

As such, when faced with claims by employee benefit funds seeking to recover unpaid contributions under ERISA, district courts must first determine whether the employer's duty to contribute for the relevant period is contractual (based on a CBA or other agreement) or statutory (based only on the obligation created by NLRA § 8(a)(5)). Where the issue is whether an employer must continue paying contributions after the CBA has expired based on a contractual provision in the CBA providing for post-expiration payments during ongoing negotiations or based on another agreement that survives the CBA's expiration, district courts do have jurisdiction. *See Vanguard*, 502 F.3d at 745 ("[T]he Funds here do not rely on any alleged statutory duty [the employer] might have to continue contributing during the post-contract status quo period. Instead, the Funds claim only that [the employer] violated a contractual duty stemming from the participation agreements. Because this contract relates to a welfare benefit plan governed by ERISA, the lawsuit falls within the federal question jurisdiction of the court."); *id.* at 743 (also noting that the CBA provided that the employer's

---

[9] The Supreme Court found that "both the text and the legislative history of [ERISA Sections] 501 and 502(g)(2) provide firm support for the . . . conclusion that th[e] remedy [provided by ERISA] is limited to the collection of 'promised contributions' and does not confer jurisdiction on district courts to determine whether an employer's unilateral decision to refuse to make post[-]contract contributions constitutes a violation of the NLRA." *Advanced Lightweight Concrete*, 484 U.S. at 548–49.

obligation to make contributions would continue during periods where the CBA was being negotiated, providing for a "status quo" period after the CBA's expiration).

When no such contractual provision is present, however (and thus the only possible law compelling an employer to make contributions is the NLRA), district courts have found that they do not have jurisdiction to resolve the issue. *See Zaccone Wholesale Produce*, 874 F. Supp. at 189–90 (granting summary judgment in favor of an employer after finding that the health and welfare fund plaintiffs' argument that an employer was required by ERISA to contribute to the funds after the CBA's expiration was "largely foreclosed by" *Advanced Lightweight Concrete*); *Midwest Operating Eng'rs Welfare Fund v. County of Mercer*, No. 14-2436, 2014 WL 5821795, at *2 (N.D. Ill. Nov. 10, 2014) (granting the county's motion to dismiss in a case seeking to recover contributions pursuant to an expired CBA because "[t]he Fund has not presented sufficient evidence to show that this is a contractual claim rather than a statutory one" and noting that "[a] district court would have jurisdiction over a post-CBA delinquent contributions claim only if there was a contractual basis for that claim"); *Marine Terminal, Welfare Fund v. Tri-River Docks, Inc.*, No. 90 C 3461, 1992 WL 82389, at *1 (N.D. Ill. Apr. 20, 1992) (finding that the court lacked subject matter jurisdiction to decide the portion of the funds' claim for contributions which arose after the CBAs expired).

b.  **RiverStone's Obligation to Pay Contributions**

Having laid out the relevant legal framework, the Court turns to the facts of this case. First, it will examine the CBA for any provisions that bear on the issue at hand.[10]  The CBA establishes that RiverStone must contribute a specified amount to the Pension Fund and the Welfare Fund for every hour for which an employee received wages under the terms of the

---

[10] "When considering a contract in the context of an ERISA claim, federal common law rules of interpretation apply." *Cent. States Se. & Sw. Areas Pension Fund v. Kroger*, 73 F.3d 727, 731 (7th Cir. 1996).

agreement. CBA art. 16, Guth Decl. Ex. A, ECF No. 22-1 at 4–23. The agreement was set to terminate on May 1, 2016, *id*. art. 21; neither party disputes that the CBA's term ended on that date, *see* Pl.'s Resp. Def.'s Cross-Mot. Summ. J. & Reply Supp. Pl.'s Mot. Summ. J. 4. The CBA notes that "[i]t is contemplated that the parties will meet at least sixty . . . days prior to the expiration of [the CBA] for the purpose of negotiating a new one." CBA art. 21. But nowhere in the CBA appears any language about a duty on RiverStone's part to continue to pay these contributions after the CBA expired and while negotiations as to a new CBA were ongoing. Any duties under the CBA clearly terminated on May 1, 2016.[11]

RiverStone also agreed in the CBA to be bound by the terms and provisions of the Agreement and Declaration of Trust of the Midwest Operating Engineers Pension Fund and the Agreement and Declaration of Trust of the Midwest Operating Engineers Welfare Fund ("Trust Agreement") as long as it was required to make contributions to the Pension Fund and the Trust Fund. CBA art. 16. The Trust Agreement[12] states that employers must promptly pay the contributions required under their CBA or similar agreement. Trust Agreement part I art. VI, Def.'s Cross-Mot. Summ. J. Ex. C, ECF No. 47-3 at 1–46. The Trust Agreement would terminate "[w]hen there is no longer a [CBA] or other written agreement in force and effect, requiring Employer Contributions to be made to the Trust Fund." *Id*. part IV art. II. As with the CBA, no provision in the Trust Agreement compels RiverStone to continue paying contributions while negotiations for a new CBA are ongoing.

---

[11] The Administrative Law Judge ("ALJ") deciding an unfair labor practice claim between the parties likewise found that nothing in the CBA extends RiverStone's duties beyond the expiration date of May 1, 2016. ALJ Decision 13, Def.'s Cross-Mot. Summ. J. Ex. A, ECF No. 47-2 at 1–27 ("[T]he parties' most recent [CBA] expired in 2016. . . . There is . . . no language in the expired contract indicating that any of its provisions would survive its expiration.").

[12] The Funds attach only the Agreement and Declaration of Trust of the Midwest Operating Engineers Welfare Fund to their Cross-Motion for Summary Judgment.

It is clear that RiverStone's contractual duty to abide by the terms of the CBA and the Trust Agreement ceased on May 1, 2016, and these agreements do not establish any obligation on RiverStone's part to maintain the status quo after the CBA's expiration. The Funds do not point to any other agreement which might bear on the issue. And this case concerns only RiverStone's duty to make contributions on behalf of the new employees, all of whom were hired after this date. *See* Pl.'s Mot. Summ. J. 2, 3, 14–15; Def.'s Cross-Mot. Summ. J. 1–2, 11. The Court thus finds that the Funds are not entitled to contributions from RiverStone on behalf of the new employees under either the terms of the CBA or Trust Agreements or pursuant to ERISA, which requires the existence of a contractual duty.

None of the Funds' arguments to the contrary compel a different conclusion. The Funds note that RiverStone has continued to make contributions on behalf of initial employees who have returned to work even though the CBA has expired. Def.'s Cross-Mot. Summ. J. 11. However, an employer's continued payment of contributions after the expiration of the CBA is not conclusive proof that the employer considers the CBA to still be valid; it may be merely abiding by its statutory duties under the NLRA. *See Dugan v. R.J. Corman R. Co.*, 344 F.3d 662, 668–69 (7th Cir. 2003) (finding that an employer's payment of contributions on behalf of some employees after the CBA expired did not establish that the employer considered the CBA to still be in effect because the payments may have been made pursuant to the employer's statutory duty and, if so, "were not an acknowledgment of a contractual obligation"). And indeed, RiverStone explicitly stated this in a letter in which it advised that it was continuing to make contributions on behalf of certain initial employees who had resumed working for RiverStone. *See* June 30, 2020 Letter, Def.'s Cross-Mot. Summ. J. Ex. G, ECF No. 47-4 at 1–2 ("[W]e have not now agreed nor have we agreed at any time in the past that by sending these

contributions we are adopting or agreeing to be bound by any [CBA] with the Union. . . . [T]o the contrary, we are only doing this so that we will remain in compliance with the provisions of federal labor law.").

The Funds also make an argument under § 8(a)(5) of the NLRA, appearing to conflate the NLRB's finding that employers are required to maintain the status quo during post-contract negotiations to avoid a violation of this provision with case law detailing the limited circumstances in which an employee benefit fund may recover unpaid contributions under ERISA without a valid CBA. *See* Def.'s Cross-Mot. Summ. J. 10–11. But as the Court explained above, it does not have jurisdiction to examine whether RiverStone has a statutory duty to pay contributions on behalf of any of its employees after May 1, 2016, in the absence of a concurrent contractual duty.[13]

Because the Court has no jurisdiction to resolve the Funds' request for unpaid contributions beyond May 1, 2016, after the expiration of all relevant contracts, and because the new employees only worked after that date, the Court does not find it necessary to address the parties' arguments as to whether the new employees should be classified as permanent replacements, *see* Pl.'s Mot. Summ. J. 5–6; Def.'s Cross-Mot. Summ. J. 12–15: the Court would not have jurisdiction to consider whether the Funds may recover contributions on their behalf in

---

[13] In the March 18, 2020 order, the Court found that its subject matter jurisdiction over RiverStone's complaint was not preempted by the NLRA because the claim centered on whether RiverStone had breached the CBA. Mar. 18, 2020 Order 5, 7–8 ("[E]ven if the NLRA does apply to this suit, the Court retains concurrent jurisdiction to hear the case under LMRA § 301 because this suit concerns the question of whether RiverStone breached the CBA by failing to pay for benefits accrued by the permanent replacements."); *see also William E. Arnold Co. v. Carpenters Dist. Council of Jacksonville & Vicinity*, 417 U.S. 12, 15–16 (1974) (holding that "[w]hen an activity is either arguably protected by [§] 7 or arguably prohibited by [§] 8 of the NLRA," federal courts must defer to the NLRB, but that when "the activity in question also constitutes a breach of a [CBA], the [NLRB's] authority is not exclusive and does not destroy the jurisdiction of the courts in suits under [LMRA §] 301" (quotation marks omitted)). The Court does not disturb its previous holding here. Rather, the Court concludes that, while it has jurisdiction to consider whether a violation of the CBA occurred, it may not resolve whether the Funds are entitled to collect contributions for the period after May 1, 2016, *in the absence of any valid CBA or other agreement*—i.e., when any failure on RiverStone's part to pay contributions could constitute only a violation of § 8(a)(5) of the NLRA.

either case. Likewise, it is not necessary to address the labor law defenses put forth by RiverStone. *See* Pl.'s Mot. Summ. J. 7–10. Such issues may be important in a proceeding before the NLRB to determine whether RiverStone has violated § 8(a)(5) of the NLRA, but they are simply not relevant here.

As the Court does not find that the Funds have shown as a matter of law that they are entitled to recover contributions from RiverStone on behalf of the new employees, their Cross-Motion for Summary Judgment is denied. RiverStone's Motion for Summary Judgment is granted. The Court declares that RiverStone has no duty to make contributions to the Funds on behalf of the new employees pursuant to the CBA or the Trust Agreements.[14]

## CONCLUSION

For the foregoing reasons, RiverStone's Motion for Summary Judgment, ECF No. 22, is GRANTED; the Funds' Cross-Motion for Summary Judgment, ECF No. 47, is DENIED; and the Funds' Motion to Supplement Record with New Evidence, ECF No. 50, is GRANTED. The Clerk is directed to enter judgment and close the case.

Entered this 31st day of March, 2021.

s/ Sara Darrow<br>
SARA DARROW<br>
CHIEF UNITED STATES DISTRICT JUDGE

---

[14] The language of RiverStone's request for relief in the complaint is broad, asking for a declaration that "RiverStone is not obligated to make any contributions to the Fund on behalf of the Permanent Replacements." Compl. 3. However, based on the language in the rest of the complaint, the Court interprets RiverStone's request for a declaration as limited to its obligations under the CBA. *See id.* ("[T]here is not an obligation *arising from the CBA* that requires RiverStone to make contributions to the Fund on behalf of Permanent Replacements whose wages, hours, terms and conditions of employment do not arise from the CBA." (emphasis added)). The Court does not comment on whether RiverStone's refusal to pay contributions on behalf of the new employees violates NLRA § 8(a)(5). That is for the NLRB to say.